# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

GERMANINVESTMENTS AG and
RICHARD HERRLING, individually
and on behalf of AHMR GmbH,

              Plaintiffs,

          v.

ALLOMET CORPORATION and
YANCHEP LLC,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**C.A. No. 2018-0666-JRS**

## MEMORANDUM OPINION

Date Submitted: August 26, 2020
Date Decided: November 20, 2020

R. Craig Martin, Esquire, Peter H. Kyle, Esquire, Kelly L. Freund, Esquire of DLA Piper LLP (US), Wilmington, Delaware, Attorneys for Plaintiffs Germaninvestments AG and Richard Herrling.

John P. DiTomo, Esquire, Ryan D. Stottmann, Esquire and Aubrey J. Morin, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, Attorneys for Defendants Allomet Corporation and Yanchep LLC.

**SLIGHTS, Vice Chancellor**

As master of his complaint, a plaintiff decides, among other things, who to sue, who not to sue, where to sue and what claims to bring.[1] When a plaintiff elects not to sue a party who, "in equity and good conscience," is deemed "indispensable" to the resolution of the pled claims, courts of equity have long understood that the plaintiff's election not to sue that party cannot be countenanced and must be remedied.[2]

Plaintiffs, Germaninvestments AG and Richard Herrling, seek to invoke this Court's equitable authority to specifically enforce a Restructuring and Loan Agreement ("R&L Agreement"), and indirectly a suite of related agreements, that purportedly transfer to a separate Austrian entity all outstanding stock and membership interests in Defendants, Allomet Corporation and Yanchep, LLC. Defendants deny that specific performance is proper on several grounds, including that the relevant agreements are invalid or otherwise unenforceable as a matter of law. Especially relevant here, they also argue that Plaintiffs have failed to name

---

[1] *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("The [well-pleaded complaint] rule makes the plaintiff master of the claim"); *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon") (Holmes, J.).

[2] *See* Geoffrey C. Hazard, Jr., *Indispensable Party: The Historical Origin of a Procedural Phantom*, 61 COLUM. L. REV. 1254, 1256–82 (1961) (analyzing cases addressing the equitable indispensable party doctrine dating back to the 17th century English and Welsh courts of chancery); Ct. Ch. R. 19 (codifying the indispensable party rule).

parties who are indispensable to any adjudication of rights and obligations under the agreements implicated by the pled claims.

For reasons I explain below, I agree that Plaintiffs have failed to name indispensable parties. Specifically, Plaintiffs have elected not to name two signatories to the R&L Agreement, both of whom hold ownership interests in both Allomet and Yanchep that Plaintiffs seek to divest through their claims in this Court. According to Plaintiffs, they did not name these parties because, as alleged in their Complaint, the absent parties no longer have rights under the operative contracts. That is easy enough for Plaintiffs to plead in conclusory allegations, but not so easy for the Court to accept as truth when being called upon to make binding judgments related to contracts that were executed by parties who are not before the Court and whose voices will not be heard if the case proceeds in their absence.

The validity of the contracts at issue is central to the claims Plaintiffs have brought in this action. At Plaintiffs' election, parties with rights implicated by Plaintiffs' prayed-for relief are not before the Court to protect their interests. And, at Plaintiffs' election, they have brought their claims in a court where joinder of the indispensable parties is not feasible. Because joinder of the indispensable parties is not feasible, and the case cannot, in equity and good conscience, proceed without them, Defendants' motion to dismiss must be granted without prejudice.

2

# I. BACKGROUND

I draw the facts from the allegations in the Complaint, documents incorporated by reference or integral to the Complaint and additional materials properly submitted by the parties in connection with Defendants' motion to dismiss.[3] As I must, I accept as true the Complaint's well-pled factual allegations and draw all reasonable inferences in Plaintiffs' favor.[4]

## A. The Parties and Relevant Non-Parties

Plaintiff, Germaninvestments, is a Swiss holding company formed to manage assets for the Herrling family.[5] Its equity is divided as follows: Richard Herrling holds 34%; Anja Herrling holds 17%; Philip Herrling holds 24.5%; and Johannes Herrling holds 24.5%.[6]

---

[3] This Court provided a more thorough description of the background facts in a prior decision addressing forum issues. *See Germaninvestments AG v. Allomet Corp.*, 2019 WL 2236844 (Del. Ch. May 23, 2019), *aff'd in part, rev'd in part*, 225 A.3d 316 (Del. 2020).

[4] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006). *See also Del. Bldg. Supply, Inc. v. Barclay Farms Cmty., LLC*, 2009 WL 693258, at *1 (Del. Super. Ct. Mar. 16, 2009) ("[W]hen considering a motion to dismiss for failure to join a necessary party under [] Rule 12(b)(7), this Court must accept all of Plaintiff's well-pleaded allegations in the Complaint as true."); *cf.* Charles Alan Wright et. al., *Federal Practice and Procedure* § 1359 (3d ed. 2020) ("The district judge is not limited to the pleadings.") [hereinafter *Federal Practice*].

[5] Verified Compl. ("Compl.") (D.I. 1) ¶ 4.

[6] *Id.*

3

Plaintiff, Richard Herrling, is a German citizen who resides in Switzerland.[7]

Nominal plaintiff, AHMR GmbH ("AHMR"), an Austrian limited company, was formed for the sole purpose of holding all the equity interest in Allomet and Yanchep, Allomet's intellectual property and Yanchep's assets.[8]

Defendant, Allomet, is a Delaware corporation founded in 1998.[9] It manufactures high-performance, tough-coated metal powders using a proprietary technology for coating industrial products.[10] Defendant, Yanchep, is a Delaware limited liability company.[11] Its only assets are the two parcels of real property in North Huntingdon, Pennsylvania, where the Allomet headquarters are situated and a lease, dated November 8, 2011, between Yanchep and Allomet.[12]

---

[7] Compl. ¶ 5.

[8] Compl. ¶ 8.

[9] Compl. ¶¶ 6, 12.

[10] *Id.*

[11] Compl. ¶ 7.

[12] Compl. ¶¶ 7, 45; *see also* Compl. Exs. A, D.

4

Non-party, Mirta Hereth ("Mrs. Hereth"), is the sole member of Yanchep.[13]

Non-party, Fobio Enterprises, Ltd. ("Fobio"), a Hong Kong limited company, is the majority owner of Allomet,[14] initially owning 52,249 of its 54,132 outstanding shares of common stock and all of its 1,304 shares of preferred stock.[15] In 2016, Fobio acquired the remaining 1,883 shares of Allomet's common stock.[16]

Non-party, Dr. Hannjörg Hereth ("Hereth"), a citizen of Switzerland, owns 100% of Fobio through various entities.[17] Hereth is also a director and Chairman of the Board of Directors of Allomet.[18]

## B. The Parties Negotiate a Joint Venture to Keep Allomet Afloat

Allomet struggled with declining performance as early as 2002.[19] By the end of 2017, Allomet amassed net operating loss carryforwards of $25 million and $42.5 million in debt owed to its controller, Fobio.[20]

---

[13] Compl. ¶ 7.

[14] Compl. ¶ 9.

[15] Compl. ¶ 41.

[16] Compl. ¶¶ 50, 52.

[17] Compl. ¶ 10.

[18] Compl. ¶¶ 10, 13–14.

[19] Compl. ¶¶ 15–16.

[20] *Id.*

5

In mid-2016, Herrling was advised that Hereth was searching for a venture partner to join Allomet.[21]  On October 5 and 6, 2016, Herrling and Hereth met in Switzerland, where Hereth confirmed he was interested in forming a joint venture for the purpose of raising needed capital for Allomet.[22]  Structurally, the plan contemplated the formation of an Austrian holding company that would own (i) Allomet's intellectual property rights, (ii) the outstanding stock and membership interests in Allomet and Yanchep and (iii) all of Yanchep's buildings, land and lease rights.[23]  Because Fobio had been the principal source of financing for Allomet since its founding,[24] the parties discussed whether it would be appropriate to assign or otherwise transfer Fobio's claims against Allomet to the joint venture.[25]

As the parties negotiated the joint venture, it was clear Allomet required additional funding to continue its operations.  Accordingly, beginning January 31, 2017, Herrling extended a series of loans to Allomet to keep it afloat.[26]  Herrling

---

[21] Compl. ¶ 17.

[22] Compl. ¶ 18.

[23] *Id.*

[24] Compl. ¶ 29.  By the time the joint venture negotiations commenced, Fobio had extended a total of $42,525,475.25 in loans to Allomet.  *Id.*

[25] Compl. ¶ 20, Ex. B.

[26] Compl. ¶ 21.

6

initially loaned $500,000.[27]   On March 3, 2017, he loaned $150,000.[28]   And, on May 10, 2017, he loaned another $200,000.[29]

## C. The Parties Enter the R&L Agreement

On May 29, 2017, a draft of what was to become the R&L Agreement was circulated among the various parties.[30]   The express purpose of the R&L Agreement was "to regulate the funding of the Allomet Corporation until the establishment, under Austrian law, of a holding company in which [Herrling] and [Hereth] shall acquire a 50% stake and which shall later hold all of the shares (100%) of the Allomet Corporation."[31]   The R&L Agreement memorialized the terms of the loans Herrling had extended to Allomet, the framework for continued discussions concerning a potential Austrian-based joint venture and the funding each party was expected to contribute to the joint venture.[32]   Finally, the R&L Agreement provided that "all real property owned by Yanchep as of July 31, 2017" "shall be

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] Compl. ¶ 22; *see also* Compl. Ex. B.

[31] Compl. ¶ 23.

[32] Compl. Ex. B.

incorporated" in the to-be-formed holding company.[33]  The R&L Agreement states: "The agreement is subject to Austrian law. The place of jurisdiction is Vienna."[34]

## D. The Formation of AHMR

The parties formed the Austrian holding company contemplated by the R&L Agreement, AHMR, on July 3, 2017.[35]  AHMR was registered with the commercial register of the commercial court in Vienna, Austria the following month.[36]  Its initial stockholders were Hereth, Herrling, Hausfelder and Hereth's son-in-law, Valentin Biedermann.[37]  On December 14, 2017, Herrling transferred his share of AHMR to Germaninvestments, the holding company for his family's investment assets.[38]

AHMR is a "manager managed" entity with two groups of managing directors: Group A comprises Hereth, Biedermann and Mrs. Hereth by proxy; Group B comprises Herrling, Hausfelder by proxy and Anja Herrling by proxy.[39]

---

[33] *Id.* at 3 ¶ 4.

[34] *Id.* at 4 ¶ 9.

[35] Compl. ¶ 31.

[36] *Id.*

[37] Compl. ¶ 32.

[38] Compl. ¶¶ 4, 33. AHMR's resulting stockholders are Hereth (49%), Germaninvestments (49%), Biedermann (1%) and Hausfelder (1%). *Id.*  Hausfelder has assigned her litigation rights to Germaninvestments.  Compl. ¶ 34.

[39] Compl. ¶ 35.

Both groups' managing directors must agree on AHMR's major decisions as stated in AHMR's governance documents and as provided by Austrian law.[40]

### E. The Parties' Joint Venture Negotiations Break Down

From May 2017 through January 2018, while the parties continued to negotiate their joint venture, Herrling visited Allomet numerous times and received detailed information regarding Allomet's operations and finances.[41]　He also extended additional loans to Allomet, either individually or through Germaninvestments, bringing Allomet's total obligation to Herrling to $3,665,000.[42] While he "book[ed]" these loans under "the terms of the [R&L] Agreement,"[43] the R&L Agreement references only $950,000 in loans.[44] It is alleged that the parties discussed, but never finalized, a loan agreement among Herrling and Allomet to address the loans outside the R&L Agreement.[45]

---

[40] *Id.* Although not important to the outcome here, I note that the Group A and Group B managing directors have not agreed that this litigation should be initiated on behalf of AHMR. Compl. ¶¶ 35, 82.

[41] Compl. ¶ 35.

[42] Compl. ¶ 36.

[43] Compl. ¶ 37.

[44] *See* Compl. ¶¶ 24, 26, Ex. G.

[45] *Id.*

On January 29, 2018, the day before the R&L Agreement, by its terms, was set to expire, AHMR's shareholders entered into five agreements intended collectively to consolidate control of Allomet in AHMR.[46] Four agreements (collectively, the "Transaction Agreements") were structured to consolidate within AHMR Allomet's and Yanchep's outstanding interests: (1) the Stock Purchase Agreement ("SPA"), under which Fobio would transfer to AHMR all outstanding shares of Allomet;[47] (2) a Membership Interest Purchase Agreement ("MIPA") with Mrs. Hereth, through which AHMR would purchase Mrs. Hereth's membership interest in Yanchep;[48] (3) an Assignment and Assumption Agreement, whereby Fobio would transfer its right to purchase the remainder of Allomet's outstanding shares from a third party shareholder to AHMR;[49] and (4) a Debt Cancellation Agreement, whereby Fobio would forgive Allomet's outstanding indebtedness to

---

[46] *See* Compl. Ex. G.

[47] Compl. ¶¶ 40–41. Plaintiffs allege the SPA contains a duly executed Stock Power agreement, where Fobio commits that it "does hereby irrevocably constitute and appoint any officer of [Allomet] as attorney to transfer the said shares on the books of [Allomet] with full power of substitution in the premises." Compl. ¶ 43, Ex. C.

[48] Compl. ¶¶ 44, 48, Ex. D. Plaintiffs allege that, under the MIPA, Mrs. Hereth was required to (and did) execute an "interest power agreement" providing that she "does hereby irrevocably constitute and appoint any officer of [Yanchep] with full power of substitution in the premises." *Id.*

[49] Compl. ¶¶ 50–51, Ex. E.

Fobio, totaling $42,525,475.25.[50] The fifth and final agreement, the Supplementary Agreement, was created to allow time for the parties to secure additional tax advice regarding the structure of the joint venture (the "Supplementary Agreement").[51]

Under the Supplementary Agreement, the parties were to "regard the already signed [Transaction Agreements] as definitive" and agreed they would "then be Executed/Implemented as such."[52] But the Supplementary Agreement also acknowledged that the documents referenced had not yet "been legally signed," had not yet "become legally binding," and did not represent the "full legal implementation" of the joint venture.[53] It also deferred the parties' funding obligations and recognized that the potential joint venture still had to be negotiated.[54] By its terms, the Supplementary Agreement expired in March 2018.[55]

By mid-April 2018, the parties had reached an impasse in their negotiations.[56] Herrling had not received the "transparency" he expected and believed "important

---

[50] Compl. ¶¶ 57–58, Ex. F.

[51] *See* Compl. ¶ 59.

[52] Compl. ¶ 62.

[53] *See* Compl. Ex. G.

[54] *See id.*

[55] *See id.*

[56] *See* Compl. ¶ 71, Ex. H.

business decisions were negotiated without [him.]"[57]  On May 30, 2018, the parties stopped all joint venture discussions.[58]  With hope for an agreement now lost, Herrling offered to "walk away from the [R&L] Agreement with Hereth, provided, of course, that Allomet return all funds to . . . Herrling and Germaninvestments, plus costs."[59]  For his part, Hereth made clear that neither Herrling nor Germaninvestments possessed any interest in Allomet.[60]  Hereth then offered to return only "a fraction" of the money Herrling had either loaned to (Hereth's view) or invested in (Herrling's view) Allomet.[61]

### F. Procedural Posture

Plaintiffs filed their Verified Complaint on September 7, 2018.[62]  Count I sought to enforce the R&L Agreement and related agreements, invoking 8 *Del. C.* §168 to require Allomet to "reissue" its "lost" stock certificates in AHMR's name as contemplated by the contract.[63]  Count II alleged breach of the R&L Agreement

---

[57] Compl. ¶ 65.

[58] Compl. Ex. I.

[59] Compl. ¶ 75.

[60] Compl. ¶ 76.

[61] *Id.*

[62] D.I. 1.

[63] Compl. ¶¶ 79–85. *See also* Compl. ¶ 40.  ("As agreed in the [R&L] Agreement, Fobio, AHMR, and Dr. Hereth entered into a Stock Purchase Agreement ("SPA"), dated

12

and related agreements, seeking specific performance of those agreements' purported requirements that Allomet transfer its equity to AHMR, transfer its IP rights to AHMR and transfer Yanchep's membership interests and real property to AHMR.[64] Count III alleged unjust enrichment as a result of Defendants' failure to transfer all of Allomet's outstanding stock, Allomet's intellectual property and Yanchep's membership units and real property to AHMR as agreed to in the R&L Agreement.[65]

The parties agreed to a status quo order that was entered on October 11, 2018.[66] Defendants filed their first Motion to Dismiss and opening brief on December 10, 2018.[67] In that motion, Defendants argued the Court should specifically enforce the forum selection clause in the R&L Agreement and dismiss this action so the parties could litigate these claims in Vienna, Austria as they agreed. Plaintiffs opposed the motion and maintained the clause Defendants invoked is not

---

January 24, 2018, under which AHMR obtained all of the outstanding shares of Allomet from Fobio.").

[64] Compl. ¶¶ 86–95.

[65] Compl. ¶¶ 96–102.

[66] D.I. 17.

[67] D.I. 26, 27.

a forum selection clause and, even if it is, it is either not mandatory or not enforceable with respect to their claim under Section 168(a) of the DGCL.

I granted Defendants' motion to dismiss the Complaint for improper venue.[68] On appeal, the Supreme Court affirmed my determination that Section 168(a) did not apply here, but reversed the determination that the forum selection clause was mandatory as a matter of Austrian law.[69]

Following remand, Defendants again moved to dismiss Plaintiffs' Complaint, this time on four grounds. First, Defendants argue the action cannot proceed without joinder of Fobio and Mrs. Hereth, whose property and contract rights are directly at issue and will be materially affected in this litigation.[70] Second, Defendants contend Plaintiffs do not have standing to act for AHMR. Third, Defendants invoke the doctrine of *forum non conveniens* to argue that litigating these claims in Delaware will impose an overwhelming hardship that warrants dismissal. Finally, Defendants

---

[68] *Germaninvestments AG v. Allomet Corp.*, 2019 WL 2236844, at *8 (Del. Ch. May 23, 2019).

[69] *Germaninvestments AG v. Allomet Corp.*, 225 A.3d 316, 330 (Del. 2020).

[70] Defendants also argue that AHMR is a necessary party. Plaintiffs counter with the obvious—HMR already is a party as a named plaintiff. Defendants riposte is that AHMR has improperly been named as a party plaintiff under controlling Austrian law. Because the issue involves Austrian law, and I need not decide it given my determination that Fobio and Mrs. Hereth are indispensable parties, I pass on the opportunity to weigh in on Austrian stockholder voting mechanics.

14

argue the Complaint fails to state claims for which relief can be granted.[71]  For reasons explained below, the motion must be granted because Plaintiffs have failed to name indispensable parties who cannot be joined and without whom the action cannot proceed in equity and good conscience.

## II. ANALYSIS

"Under Court of Chancery Rule 12(b)(7), a defendant may move for dismissal because of a failure to join a party under Rule 19."[72]  Rule 19(a) states:

> *Persons to be joined if feasible.*  A person who is subject to service of process and whose joinder will not deprive the Court of jurisdiction over the subject matter of the action shall be joined as a party in the action if
>
> (1) in the person's absence complete relief cannot be accorded among those already parties, or
>
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
>
> (i) as a practical matter, impair or impede the person's ability to protect that interest or
>
> (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
>
> If the person has not been so joined, the Court shall order that the person be made a party.

---

[71] D.I. 66.

[72] *Makitka v. New Castle Cty. Council*, 2011 WL 6880676, at *2 (Del. Ch. Dec. 23, 2011).

If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or in a proper case, an involuntary plaintiff.[73]

If a party should be joined under Rule 19(a), the Court's next inquiry is whether joinder is feasible. If it is, then the Court will direct that joinder occur.[74] But if joinder is not feasible, Rule 19(b) requires the court to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."[75] To this end, Rule 19(b) offers a nonexclusive list of factors to consider when determining whether the action can proceed without the absent party's involvement.[76]

Because joinder of indispensable parties is a condition precedent to issuing judgment, I begin by analyzing whether Plaintiffs have named as defendants all parties who ought to be before the Court for a fair and just adjudication of this

---

[73] Ct. Ch. R. 19(a) (formatting added).

[74] *Id.*

[75] Ct. Ch. R. 19(b).

[76] These factors include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder. Ct. Ch. R. 19(b).

16

dispute.[77]  And because I have determined, for reasons set forth below, that Mrs. Hereth and Fobio are necessary parties who are absent from the proceedings, I then assess whether they can be feasibly joined.  As explained below, joinder is not feasible.  Thus, I take up the final question in the Rule 19 inquiry—can the action proceed without the absent parties in "equity and good conscience."  It cannot.  The Complaint, therefore, must be dismissed.[78]

### A. Defendants Did Not Waive Their Argument Under Rule 19

As an initial matter, Plaintiffs argue Defendants waived their Rule 19 defense after failing to raise it in their first motion to dismiss.[79]  For this, Plaintiffs rely on Rule 12(g), which states, "[i]f a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on any of the defenses or objections so omitted."[80]

---

[77] *See Elster v. Am. Airlines*, 106 A.2d 202, 203 (Del. Ch. 1954) (stating that absent an indispensable party, "this court c[an] not adjudicate any differences between the present parties . . . .").

[78] I do not reach this conclusion lightly.  I am mindful that trial courts "are reluctant to grant motions to dismiss of this type." *Federal Practice*, *supra*, § 1359.  I am also mindful that, "[i]n general, dismissal is warranted only when the defect is serious and cannot be cured." *Id.*  But, for reasons explained below, I am satisfied that this case clears this high bar for dismissal.

[79] Pls.' Br. (D.I. 73) at 16–17.

[80] Ct. Ch. R. 12(g).

Plaintiffs' reading of Rule 12 is mistaken. Rule 12(h)(2) provides that failure to join an indispensable party under Rule 19 "may be [raised] in any pleading permitted or ordered by Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."[81] Because Rule 12(h)(2) allows Rule 12(b)(7) arguments to be raised up to and including trial, Defendants' Rule 19 defense is excepted from the waiver provisions of Rule 12(g).[82] This accords with the "basic purpose of Rule 12(h)(2) [which] is to preserve the defenses," not limit them.[83]

Plaintiffs also contend that Defendants are intentionally abusing this Court's process by filing a series of motions as a dilatory tactic. I disagree. Defendants' first motion addressed the threshold question of whether the case should proceed here or in Austria, where Defendants believed the parties had agreed to litigate.

---

[81] Ct. Ch. R. 12(h)(2).

[82] *See Federal Practice, supra*, § 1359 ("Rule 12(h)(2) expressly provides that a Rule 12(b)(7) defense is not waived by failing to assert it by preliminary motion or in a responsive pleading") (citing cases); *Apartment Cmty. Corp. v. Martinelli*, 859 A.2d 67, 70–71 (Del. 2004) (noting that "the construction of the [Delaware courts'] civil rules are greatly influenced by the federal judiciary's construction of the Federal Rules of Civil Procedure since these two sets of rules are almost identical.").

[83] *Council of Civic Orgs. of Brandywine Hundred, Inc. v. New Castle Cty.*, 1991 WL 279374, *1–2 (Del. Ch. Dec. 26, 1991) ("If too literal a reading of the rule is employed, the Court would be faced with the anomalous situation of having to postpone until trial an issue that is ripe for decision at a much earlier stage of the proceedings."); *see also Lewis v. Straetz*, 1986 WL 2252, at *2 (Del. Ch. Feb. 12, 1986) (explaining that the timing requirements in Rule 12 should be applied flexibly). It is also useful to note here for context that the court may "raise[] the failure to join a party on [its] own motion." *Federal Practice, supra*, § 1359.

When the matter was remanded, Plaintiffs were advised of Defendants' Rule 19 argument immediately and Plaintiffs consented to the briefing schedule.[84] The defense has been timely asserted and there has been no unjust delay.[85]

**B. Rule 19(a) Requires Joinder of Fobio and Mrs. Hereth**

Rule 19(a)(1) requires joinder of an absent party if, "in the person's absence, complete relief cannot be accorded among those already parties."[86] Rule 19(a)(2) requires joinder if "the person claims an interest relating to the subject of the action" and any decision on the action may "(i) as a practical matter, impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."[87]

"Delaware decisions recognize that when litigation places at issue the validity or enforceability of property rights, such as a party's rights under an agreement, then

---

[84] D.I. 70.

[85] *See Council of Civic Orgs. of Brandywine Hundred, Inc.*, 1991 WL 279374, at *2 ("[T]he better reasoned approach is to allow the defenses to be raised by motion at times other than those specifically delineated in the rule."). I note that the "court may consider the timing of the motion in determining whether 'in equity and good conscience' a motion to dismiss for lack of an indispensable party should be denied or granted." *Federal Practice, supra,* § 1359 (citations omitted). I take up that question below.

[86] Ct. Ch. R. 19(a)(1).

[87] Ct. Ch. R. 19(a)(2).

the holders of the property rights have an interest in the subject matter of the action such that they should be joined as parties."[88] "Unless it is obvious that one not joined has no interest whatever in the subject matter of the suit," all parties to a contract under dispute are necessary.[89] And when shares of a Delaware corporation are in dispute, and all parties with an interest in that property have not been joined, "there is a substantial risk that the court cannot accord complete relief in the [missing parties'] absence."[90]

Here, Plaintiffs seek specific enforcement of the R&L Agreement, while Defendants assert the R&L Agreement is neither valid nor enforceable.[91] The

---

[88] *Perry v. Neupert*, 2017 WL 6033498, at *12 (Del. Ch. Dec. 6, 2017); *see also Elster*, 106 A.2d at 204 ("All parties to a contract sought to be cancelled are indispensable parties to the suit for cancellation unless it is obvious that one not joined has no interest whatever in the subject matter of the suit.").

[89] *Elster*, 106 A.2d at 204 (holding that option holders were necessary parties because "[t]he question of whether or not these options are void is an issue in this case" and "[t]he disposition of this issue would seriously affect the rights of the optionees").

[90] *See Perry*, 2017 WL 6033498, at *13; *see also Hodson v. Hodson Corp.*, 80 A.2d 180, 181 (Del. Ch. 1951) ("[I]t is the rule, long settled in this state, that the owner of shares of stock in a Delaware corporation is an indispensable party to an action to cancel such shares. . . ."); *Federal Practice*, *supra*, § 1613 ("In cases seeking reformation, cancellation, rescission, or otherwise challenging the validity of a contract, all parties to the contract usually will have a substantial interest in the outcome of the litigation and their joinder will be required.") (citations omitted).

[91] *See* Defs.' Opening Br. (D.I. 71) at 44–45 ("[T]he R&L Agreement makes clear that the parties were free to 'decide otherwise' with respect to the structure of a joint venture, or agree to no venture at all."); *id.* at 47 ("[T]he Complaint makes clear that integral aspects of the transaction Plaintiffs seek to enforce never came to fruition.").

Complaint alleges that Fobio has already performed its obligations under the R&L Agreement and, therefore, no longer has any interest in this dispute.[92]  As for Mrs. Hereth, Plaintiffs would have the Court "[d]eclare AHMR the rightful owner of all Yanchep's assets and order Yanchep to immediately transfer all right, title, and interest in its assets to AHMR."[93]  To grant this relief, the Court would have to determine, as a predicate, that the R&L Agreement and the Transaction Agreements that would enable (and require) Yanchep and Allomet to transfer other parties' property are enforceable.[94]  Conversely, to deny Plaintiffs' requested relief would require the Court to hold the R&L Agreement and Transaction Agreements giving rise to Plaintiffs' claim to Allomet's shares and Yanchep's membership units and real property are invalid or unenforceable.  Either way, the Court inevitably must determine Fobio and Mrs. Hereth's respective rights, interests and obligations with respect to Allomet and Yanchep.[95]

---

[92] Compl. ¶ 89.

[93] Compl. at 27 (Prayers for Relief).

[94] Yanchep's ability to perform its obligations under the R&L Agreement is contingent on this Court's finding that the MIPA is effective.  Compl. ¶¶ 44–48, Ex. D.  Allomet's ability to perform its obligations under the R&L Agreement is contingent on this Court's finding that the SPA is effective.  Compl. ¶¶ 41–43, Ex. C.  Defendants argue these contracts are not enforceable.

[95] *See* Compl. Ex. B at 2–3 ("[A]n Austrian holding company is to be established in which the following assets of Allomet and Yanchep shall be incorporated: 100% . . . of the shares of the Allomet Corporation . . . which are currently held by Fobio . . . . All [of Yanchep's] buildings, land and/or rights to such . . . free from . . . encumbrances . . . . The loans paid

Under Rule 19(a)(1), then, there is "substantial risk that the court cannot accord complete relief" without Fobio and Mrs. Hereth being made party to the action.[96] Any judgment the Court might enter for Plaintiffs necessarily would involve a determination that contracts transferring Fobio and Mrs. Hereth's interests in Allomet and Yanchep, respectively, to AHMR are valid and enforceable. That ruling, however, could not and would not bind the absent parties to their agreements, and could not and would not finally adjudicate their rights and obligations under the agreements.[97]

The prospect of undertaking a likely nonbinding determination of contractual rights and obligations in the shadow of absent parties is especially problematic here, where the agreements purportedly binding the absent parties expressly suggest that the contracts, themselves, are not binding.[98] While the named Defendants are

---

to Allomet by Fobio . . . shall be assigned or transferred to the Austrian holding company unless the parties mutually decide otherwise . . . .").

[96] Ct. Ch. R. 19(a); *see also Perry*, 2017 WL 6033498, at *13 ("Further proceedings would be required that would involve questions about the preclusive effect of this court's decision, among other matters. Even if not technically binding, a ruling may impair the [absent party's] rights as a practical matter.").

[97] *See Perry*, 2017 WL 6033498, at *13.

[98] *See, e.g.*, Compl. Ex. F (boldly stamping "draft" in the margins of the contract).

incented to raise defenses, that does not mean the absent parties, whose rights would be directly affected, do not have a right to be heard.[99]

Rule 19(a)(2) is also implicated here for similar reasons. A judgment for Plaintiff would, "as a practical matter, impair or impede" the absent parties' ability to protect their interests.[100] Not only is this unfair on its face, the adjudication of these claims without Fobio and Mrs. Hereth presents "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed

---

[99] Plaintiffs cannot be heard to argue, and have not argued in their brief, that the named Defendants will adequately protect the absent party's interests. When a necessary nonparty's interests "are not necessarily fully represented by [the named defendants]," the action cannot continue in their absence. *NuVasive, Inc. v. Lanx, Inc.*, 2012 WL 2866004, at *3 (Del. Ch. July 11, 2012). Here, the interests of the named defendants and absent parties are not necessarily aligned. The Supplementary Agreement stipulates that the Transaction Agreements constituted the "entire transaction structure under company law for all of the Allomet shares" to be transferred from Fobio to AHMR, and for all of the interests of Yanchep to be transferred to AHMR. Compl. ¶ 60, Ex. G. Defendants' and the absent parties' interests may diverge with respect to some of these agreements. Allomet does not share Fobio's interest in the cancellation of Fobio's $42 million loan to Allomet; and, even though Mrs. Hereth owns 100% of the Yanchep units, Yanchep (a manager managed LLC) does not necessarily share Mrs. Hereth's interests concerning the enforceability of the MIPA, which purports to transfer to any of Yanchep's officers the right to transfer her Yanchep units and her interest in Yanchep's real property. Compl. ¶ 48, Ex. D; *see also* Compl. Ex. A § 6 (identifying two Yanchep managers). It is no surprise, then, that Plaintiffs did not raise in their briefing the argument that the named Defendants fully represent the absent parties' interests. *See* Pls.' Br. at 29–34. "Arguments not briefed are deemed waived." *Jackson v. Nocks*, 2018 WL 1935961, at *8 n.127 (Del. Ch. Apr. 24, 2018) (citing *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999)).

[100] *See* Ct. Ch. R. 19(b).

interest," as either absent party may later attempt to assert their rights with respect to the property interests implicated in this action.[101]

Plaintiffs argue that if the Court accepts as true the Complaint's allegation that Fobio and Mrs. Hereth have already fully performed their obligations under the Transaction Agreements and, thus, are no longer necessary parties, then there is no need to account for their absence.[102] I disagree.

*Elster v. American Airlines, Inc.* is instructive.[103] There, the court considered on a motion to dismiss whether nonparty beneficiaries of stock options were indispensable in an action to invalidate the options.[104] The plaintiffs argued the beneficiaries were not necessary parties because plaintiffs had alleged in their complaint that the options were void.[105] The court disagreed, holding the beneficiaries were necessary, notwithstanding the complaint's conclusory

---

[101] Ct. Ch. R. 19(a)(2).

[102] Pls.' Br. at 29–33. For their proposition that the Court must accept as true their conclusory allegations as to the performance of contracts, Plaintiffs rely solely on *Del. Bldg. Supply, Inc.*, 2009 WL 693258, at *1. But that decision concerned an *in rem* request for a mechanics lien under 25 *Del. C.* § 2712, where a former property owner was determined by the Court not to be a necessary party to the action because the plaintiff had named the new owner based on a recorded deed that was not subject to dispute. Here, Fobio and Mrs. Hereth are parties to contracts the validity of which is the principal issue in the case. Plaintiffs' sole cited authority is therefore inapposite.

[103] 106 A.2d at 204.

[104] *Id.*

[105] *Id.*

24

allegations, because their rights would be directly affected by the court's decision.[106]

Specifically, the court held:

> [T]he question of whether or not these options are void is an issue in this case. The disposition of the issue would seriously affect the rights of the optionees. That determination must await the trial of the cause. Since the interests of the optionees would be so seriously affected thereby, they should have the opportunity of being heard.[107]

Here, as in *Elster*, the question of whether the contracts governing Fobio and Mrs. Hereth's rights are enforceable is an issue central to this case. Here, as in *Elster*, for reasons already stated, disposition of Plaintiffs' complaint would "seriously affect the rights" of Fobio and Mrs. Hereth. And here, as in *Elster*, the Court need not and will not conclude that the absent parties no longer have rights simply because Plaintiffs allege that to be so.[108]

---

[106] *Id.*

[107] *Id.* *See also Perry*, 2017 WL 6033498, at *12 (explaining that, while Rule 19 has added layers of analysis since *Elster* was decided, "the older cases [such as *Elster*] remain informative for the first step of the analysis when assessing whether the absentee is a party that should be joined.").

[108] *See In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 168 ("A trial court is not, however, required to accept as true conclusory allegations 'without specific supporting factual allegations.'") (citation omitted).

* * * * *

Because Rule 19(a)'s elements are satisfied, the absent parties to the instant action must be joined if feasible.[109]  I address that question next.

**C. Joinder of Fobio and Mrs. Hereth Is Not Feasible**

Rule 19(a) limits nonparties who "shall be joined as a party in the action" to those "subject to service of process."[110]  In other words, the Rule acknowledges that it is not feasible to join a party when that party is not subject to service of process.[111]  While the party asserting Rule 19 as a defense bears the burden of demonstrating that the absent party is not subject to service, the defense will be tested

---

[109] In some instances, the court will defer ruling on a motion to dismiss under Rule 12(b)(7) until after discovery when there is some question regarding whether the absent parties are actually necessary.  *See Federal Practice, supra*, § 1359.  That is not the case here, however.  Both Fobio and Mrs. Hereth are indisputably signatories to the R&L Agreement.  Compl. Ex. B.  And, as noted above, Plaintiffs seek declarations and the grant of specific performance that would inevitably require, as a predicate, enforcement of the Transaction Agreements divesting Fobio and Mrs. Hereth of their property interests in Allomet and Yanchep, respectively.  The Complaint pleads plainly that "the stock certificates previously owned by Fobio remain in Fobio's name."  Compl. ¶ 83.  Further, Plaintiffs claim AHMR purchased membership units belonging to Mrs. Hereth.  Compl. ¶ 44–48.  Again, the Complaint pleads that these agreements constitute integral parts of the "entire transaction structure" to execute the R&L Agreement.  Compl. ¶ 60.  "Only in a plenary proceeding before a court that has *in personam* jurisdiction over [all] the litigants may the court adjudicate the litigants' property interest in disputed corporate shares."  *Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 201–02 (Del. 2011).

[110] Ct. Ch. R. 19(a).

[111] *Perry*, 2017 WL 6033498, at *13 (stating that Rule 19(a) speaks "in terms of whether the absent party is 'subject to service of process,' not whether the absent party is subject to personal jurisdiction . . .  if service can be effected, then the absent party should be joined and served, at which point the absent party can raise Rule 12 defenses on its own behalf.").

26

not on a plaintiff's general assertion that service can be effected[112] but on a careful assessment of the "facts which are before the Court."[113]

The well-pled facts are these: Fobio is a Hong Kong entity without any alleged ties to Delaware beyond its status as Allomet's stockholder and creditor.[114] Plaintiffs did not allege Mrs. Hereth's nationality, but Defendants assert she is a Swiss citizen (along with her husband, whose nationality is alleged in the Complaint to be Swiss[115]) and Plaintiffs do not dispute it.[116] As noted, Yanchep's only assets are the two parcels of real property in North Huntingdon, Pennsylvania and a lease, dated November 8, 2011, between Yanchep and Allomet.[117]

---

[112] As discussed below, Plaintiffs have not even made a general assertion that service of process can be effected here on the absent parties.

[113] *Hughes Tool Co. v. Fawcett Publ'ns, Inc.*, 350 A.2d 341, 345 (Del. 1975); *see also Hunt v. DelCollo*, 317 A.2d 545, 551 (Del. Ch. 1974) (stating that the determination as to whether a person can be made a party lies within the discretion of the court according to the circumstances of each case). *See also Federal Practice, supra*, § 1610 ("If the court cannot obtain personal jurisdiction through one of these methods of service of process [Rule 4 or the Long-Arm Statute] over an absentee who would be a proper Rule 19(a) party to an action, joinder cannot be allowed.").

[114] Compl. ¶¶ 9–10, 41, 50. As Defendants noted in regard to Allomet, "the Complaint alleges its place of business is Pennsylvania and is silent as to where the loans from Fobio to Allomet were made." *See* Defs.' Opening Br. at 38 n.11; Compl. ¶ 12.

[115] Compl. ¶ 10.

[116] Defs.' Opening Br. at 38; Compl. ¶ 7.

[117] Compl. ¶ 45, Exs. A, D.

These facts indicate that the absent parties are not subject to service of process.[118] That Mrs. Hereth is foreign suggests she cannot be served personally.[119] And because Fobio is a Hong Kong entity, and the events at issue in this action occurred outside of Delaware, service cannot be effected by an agent registered in Delaware or other statutory means.[120] Plaintiffs have not argued or even suggested that service would be appropriate per the Hague Convention. Nor do Plaintiffs advance any, much less a cognizable, theory of service under Delaware's Long-Arm statute "which makes availability of service coextensive with the question of personal jurisdiction."[121] Finally, it is well settled that ownership of stock in a Delaware corporation is, standing alone, insufficient to subject an individual to

---

[118] Plaintiffs have made no arguments regarding service of process—the appropriate focus at this stage of the Rule 19 inquiry. Nevertheless, I have considered possible means of service and have found none that are viable.

[119] *See* Ct. Ch. R. 4.

[120] *See id.*; *see also* 8 *Del. C.* § 321 (describing the means by which process can be served upon Delaware corporations); 10 *Del. C.* § 3111 (describing means of serving process in actions against corporations where the foreign corporation was party to an action occurring in Delaware); 10 *Del. C.* § 3114 (describing means of serving process upon nonresident directors and officers of Delaware corporations); 6 *Del. C.* § 18-105 (describing means of service of process upon domestic limited liability companies); 6 *Del. C.* § 17-105 (describing means of service of process upon domestic limited partnerships).

[121] *Perry*, 2017 WL 6033498, at *13; *see generally* Pls.' Br.; 10 *Del. C.* § 3104(b). As noted, despite being invited by Defendants to state a basis to serve process on the absent parties (Defs.' Opening Br. at 38–39), Plaintiffs advanced no argument that they have a means to effect service on either Fobio or Mrs. Hereth. *See Greenly v. Davis*, 486 A.2d 669, 670 (Del. 1984) ("[T]he burden [is] upon the plaintiff to make a specific showing that the Delaware court has jurisdiction under the long-arm statute.").

service of process,[122] unless the action is "relating directly to the legal existence of stock or its characteristics or attributes."[123] This action, of course, concerns the transfer of stock, not its existence or characteristics.[124]

Plaintiffs principal argument that joinder of these necessary parties is feasible centers on the purported fact that Mrs. Hereth and Fobio have contractually consented to jurisdiction in Delaware.[125] But the forum selection provisions to which Plaintiffs point specify that the parties agree to *out-of-court* dispute resolution via *mediation* or *arbitration* in Delaware.[126] By agreeing to these terms, Mrs. Hereth and Fobio have not consented to service of process or this Court's personal

---

[122] *See generally Shaffer v. Heitner*, 433 U.S. 186 (1967).

[123] *Onescreen Inc. v. Hudgens*, 2010 WL 1223937, at *4–6 (Del. Ch. Mar. 30, 2010).

[124] Compl. ¶¶ 2–3.

[125] *See* Pls.' Br. at 33–34. I note that Plaintiffs do not dispute Defendants' argument that the Transaction Agreements themselves "do not 'constitute a jurisdictional act in Delaware, much less subject the parties to the jurisdiction of this Court.'" Defs.' Opening Br. at 39 n.13.

[126] Compl. Exs. C, D § 8.2(a)–(b) (stating each party "hereby waives . . . any objection to the submission of the dispute to arbitration . . . and any and all rights to have the dispute decided by a jury. The arbitration shall be conducted in Wilmington, Delaware or such other location as the parties and the arbitrator may agree in accordance with the Model Rules for Arbitration under the DRAA . . . .").

jurisdiction; if anything, they have revealed their lack of consent by specifying that disputes arising under the agreements shall be resolved outside of court.[127]

Plaintiffs finally fall back on their argument that they should be afforded the opportunity to amend their pleadings to add the necessary parties. Certainly, Rule 15(a) provides that leave to amend pleadings "shall be freely given."[128] But our law is settled that the court should deny leave to amend when the amendment is futile.[129] Here, as noted, the necessary absent parties, Fobio and Mrs. Hereth, are beyond the Court's process. Naming them as defendants in an amended complaint, therefore, would be futile.[130]

## D. Equity (And Good Conscience) Requires Dismissal

Where, as here, there are nonparties whose joinder to this action is necessary but not feasible, Rule 19(b) requires the Court to "determine whether in equity and

---

[127] *See Graham v. State Farm Mut. Auto Ins. Co.*, 565 A.2d 908, 911 (Del. 1989) (holding that the public policy of this state encourages arbitration as an alternative to litigation and noting that Delaware courts will specifically enforce mandatory arbitration provisions).

[128] Ct. Ch. R. 15(a).

[129] *See Clark v. State Farm Mut. Auto Ins. Co.*, 131 A.3d 806, 811 (Del. 2016) ("Although Rule 15 provides that leave to amend a complaint shall be 'freely given,' leave to amend should be denied when the proposed amendment would be futile.").

[130] In a footnote, Plaintiffs also state that, "should the Court order joinder and any parties assert jurisdictional defenses, Plaintiffs would be entitled to jurisdictional discovery and reserve the right to take discovery." Pls.' Br. at 34 n.12. But, for the reasons stated above, there is no basis to conclude the absent parties could be served with process, much less be subject to the Court's personal jurisdiction.

good conscience the action should proceed among the parties before it, or should be dismissed."[131]  Rule 19(b) offers a nonexclusive list of four factors, which are "interdependent and must be considered [both] in relation to each other"[132] and the facts of the case:

> First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.[133]

Application of these factors here makes clear the Court cannot "in equity and good conscience" proceed without Fobio and Mrs. Hereth.[134]  *First*, proceeding without Fobio and Mrs. Hereth will be prejudicial to parties both absent and present.

---

[131] Ct. Ch. R. 19(b); *see also Hughes Tool Co.*, 350 A.2d at 344 ("Subparagraph (b), of course, contemplates a finding that one who should be joined 'cannot be made a party' before the Court begins applying the factors which determine the fate of the action."); *Kennett v. Carlyle Johnson Mach. Co.*, 2002 WL 1358755, at *6 (Del. Ch. June 17, 2002) ("[B]ecause [absent parties] are 'necessary' parties, I must assess whether . . . this action should be allowed to proceed with only the existing parties or whether . . . the absent persons are indeed 'indispensable.'").

[132] *Marina View Condo. Ass'n of Unit Owners v. Rehoboth Marina Ventures, LLC*, 2018 WL 1172581, at *2 (Del. Ch. Mar. 6, 2018); *see also Council of Civic Orgs. of Brandywine Hundred, Inc. v. New Castle Cty.*, 1993 WL 390543, at *7 (Del. Ch. Sept. 21, 1993) ("The weight to be given each factor in a Rule 19(b) analysis must be determined by the trial court in light of the controlling equity and good conscience test and in terms of the facts and circumstances of each particular case.").

[133] Ct. Ch. R. 19(b).

[134] *Id.*

"[A]ny judgment determining that the transfers" were effective or ineffective would be prejudicial because it "would represent a judicial determination that [the losing parties] do not have property rights."[135] Further, the disputed agreements to which Fobio and Mrs. Hereth are parties contain forum selection provisions requiring out-of-court dispute resolution.[136] Thus, "any determination by this Court would not be binding on them; litigation in another forum would be necessary to resolve and define their rights."[137] This would adversely affect the named parties and absent nonparties alike.

*Second*, prejudice to the necessary nonparties cannot be lessened or avoided. While Fobio and Mrs. Hereth's ostensible ability to intervene in the action "lessens any potential prejudice,"[138] neither party is located within the United States nor

---

[135] *Kennett*, 2002 WL 1358755, at *3 (determining that parties to an LLC operating agreement, who transferred ownership and management interest, were indispensable parties in an action to determine the validity of the transfer).

[136] Compl. Ex. C § 8.2 (SPA purportedly binding Fobio to the sale of Allomet stock); Compl. Ex. D § 8.2 (MIPA purportedly binding Mrs. Hereth to the sale of Yanchep units).

[137] *Kennett,* 2002 WL 1358755, at *3.

[138] *Makitka*, 2011 WL 6880676, at *6 (citing *Miles Inc. v. Cookson Am., Inc.*, 1994 WL 114867, at *5 (Del. Ch. Mar. 3, 1994)); *see* Pls.' Answering Br. at 34 n.12 (arguing that dismissal is not required under Rule 19 because "Fobio and Mrs. Hereth have intervention rights").

32

closely tied to the state of Delaware.[139]  And, again, both Fobio and Mrs. Hereth bargained for alternative dispute resolution.  Requiring intervention to avoid prejudice would deny the absent parties their contractual rights.  Since neither intervention nor joinder would meaningfully prevent prejudice, the second Rule 19(b) factor weighs in favor of dismissal.[140]

*Third*, judgment rendered without joinder of Fobio and Mrs. Hereth would be inadequate because it would encourage litigation to proceed in piecemeal fashion.[141] To recount, Plaintiffs seek specific performance of agreements implicating Fobio and Mrs. Hereth's interests in Allomet and Yanchep, respectively.  But Defendants cannot unilaterally cancel Fobio and Mrs. Hereth's ownership interests and reissue new stock titled to AHMR.[142]  A decision for Plaintiffs would invite Fobio and

---

[139] *See Council of Civic Orgs. of Brandywine Hundred, Inc.*, 1993 WL 390543, at *5 (stating the Court must consider "whether intervention would impose undue hardship on the absentee").

[140] As discussed in more detail above, it is difficult to conceive of a situation in which this Court can fashion a remedy for Plaintiffs that would lessen the prejudice to the absent parties when their property rights are in dispute and yet they are not present to defend them.

[141] *See Makitka*, 2011 WL 6880676, at *6 ("In other words, will this suit, if permitted, encourage piecemeal litigation, or otherwise be undesirable.").

[142] *See Reddy v. MBKS Co., Ltd.*, 945 A.2d 1080, 1087–88 (Del. 2008) (affirming the invalidation of a Company's attempt to unilaterally cancel and reissue stock to a new stockholder because no enforceable agreement existed between the alleged transferor and transferee of the stock); *see also* 8 *Del. C.* § 159 ("The shares of stock in every corporation shall be deemed personal property and transferable as provided in Article 8 of subtitle I of Title 6."); 6 *Del. C.* § 18-701 ("A limited liability company interest is personal property . . . .").

33

Mrs. Hereth to contest the validity of that decision in future litigation.[143] Thus, the third Rule 19(b) factor weighs in favor of dismissal.

*Fourth*, Plaintiffs have an adequate and available forum in Austria, which this Court and the Supreme Court have recognized has a material interest in this dispute.[144] Indeed, Plaintiffs are presently pursuing a related action in Austria.[145] With that said, even if Plaintiffs did not have an alternative forum where they could prosecute their claims against all necessary parties, dismissal would not unduly offend equity and good conscience because Plaintiffs seek remedies here that will directly and significantly affect the rights of absent parties who cannot be brought before the Court.[146]

---

[143] *See Makitka*, 2011 WL 6880676, at *6 (stating that the consideration as to whether the absent party "would [ ] be able to adequately protect its interests should the matter go forward" is vital to the adequacy of a judgment); *Kennett*, 2002 WL 1358755, at *4 (holding that equity and good conscience require dismissal when the court "cannot devise a framework that allows for relief that would assist [Plaintiffs] without also resolving, if only by implication, significant rights of [absent parties].").

[144] *Germaninvestments*, 225 A.3d at 332 ("[W]e agree with the Court of Chancery's determination that the connection to Austria is sufficiently material so as to require the analysis of the Forum Clause to be examined under Austrian law."). Nothing in this Memorandum Opinion is intended to state definitively that Plaintiffs may assert the claims brought in this action against the Defendants here or the absent parties in another forum.

[145] Defs.' Opening Br. Ex. 1. This Court can take judicial notice of court filings. *See Metro. Life Ins. Co. v. Tremont Gp. Hldgs., Inc.*, 2012 WL 6632681, at *12 (Del. Ch. Dec. 20, 2012); *In re Transamerica Airlines, Inc.*, 2009 WL 2217748, at *4 (Del. Ch. July 22, 2009) (taking judicial notice of foreign pleadings and judgments).

[146] *Makitka*, 2011 WL 6880676, at *6 (citing *Council of Civic Orgs. of Brandywine Hundred, Inc.*, 1993 WL 390543, at *7). As noted above, delay in bringing the Rule 19 defense to the Court, in some instances, can influence the Court's application of the "equity

## III.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Verified Complaint is GRANTED.  The Complaint is dismissed without prejudice.[147]

**IT IS SO ORDERED.**

---

and good conscience" standard.  *See Federal Practice*, *supra*, § 1359.  For reasons noted above, I am satisfied there has been no unjust delay here.

[147] *See* Ct. Ch. R. 41(b) (specifying that dismissals based on "failure to join a party under Rule 19" shall be without prejudice); *Federal Practice*, *supra*, § 1609 ("A dismissal under Rule 12(b)(7) is not considered to be on the merits and is without prejudice to the institution of a later action.").